UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANTONIO D. SANDERSON                                                    PLAINTIFF

V.                                             CIVIL ACTION NO. 3:23-CV-00138-JHM

LOUISVILLE METROPOLITAN GOVERNMENT                                     DEFENDANT

MEMORANDUM OPINION AND ORDER

Currently pending before the Court are Plaintiff Antonio D. Sanderson's ("Plaintiff")
motion for default judgment or summary judgment [DN 15] and Defendant Louisville
Metropolitan Government's ("LMG" or "Defendant") motion for summary judgment.  [DN 20].
These matters are fully briefed and ripe for decision.  For the following reason, Plaintiff's motion
for default judgment is **DENIED**, and LMG's motion for summary judgment is **GRANTED**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a pretrial detainee, commenced this *pro se* action pursuant to 42 U.S.C. § 1983
on March 22, 2023, against LMG, Louisville Metro Department of Corrections ("LMDC"), and
WellPath.  [DN 1].  In his complaint, Plaintiff contends that one or more of these Defendants
violated his freedom of religion under the First Amendment and the Religious Land Use and
Institutionalized Persons Act ("RLUIPA"); acted with deliberate indifference to his health, safety,
and serious medical needs by withholding medications/medical care in violation of the Fourteenth
Amendment; violated his Fifth, Eighth, and Fourteenth Amendments because of the conditions of
confinement at the LMDC, including overcrowding, lack of recreation, illegal searches, expired
food, lack of access to phones, constant light and no pillows in the dorms; and denied him access
to the courts in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendments.  Plaintiff also
alleges numerous state law claims.  Plaintiff seeks compensatory damages, punitive damages, and

injunctive relief "preventing Defendant from further violation of Plaintiff's constitutional and other rights."  [DN 1, PageID.4-5; DN 1-1, PageID.9-23].

On an initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court permitted the following claims to proceed against LMG: Plaintiff's First Amendment Freedom of Religion and RLUIPA claims, Fourteenth Amendment conditions-of-confinement claim, and Fourteenth Amendment Equal Protection Clause claim.  [DN 9].  By a service and scheduling order dated August 24, 2023, the Court ordered pretrial discovery to be complete no later than December 23, 2022, and dispositive motions to be filed no later than February 26, 2024.  [DN 10].  Following the close of discovery, Plaintiff filed a motion for default judgment on January 24, 2023, to which Defendant responded and Plaintiff replied.[1]  [DNs 15, 17, 18].

LMG then moved for summary judgment on Plaintiff's remaining claims on the grounds that his claims are either unexhausted and therefore barred by the Prison Litigation Reform Act ("PLRA") or fail to establish a constitutional violation.  [DN 20, PageID.156-166].  In support of its motion, Defendant submits, *inter alia*, LMDC's Inmate Grievance Procedures, Plaintiff's institutional grievances relating to the allegations in the complaint, and the sworn affidavits of LMDC staff members.  [DNs 20-1 to 20-8].

Plaintiff filed a response to Defendant's motion for summary judgment.  [DN 22].  Therein, he asserts that he has new evidence pertaining to his First Amendment/RLUIPA claims relating to LMDC's failure to provide him with a copy of the Quran ordered from Amazon and denial of proper Ramadan meals.  [*Id.*, PageID.266-267].  As to his conditions of confinement claim, Plaintiff states that he "filed a grievance regarding the issues of his living quarters, [but] was not properly advised by grievance counselors that he has to appeal his grievance for a grievance to be

---

[1] Although stylized/captioned as a "motion for default judgment/summary judgment," the substance of Plaintiff's motion seeks a default judgment.

binding." [*Id.*, PageID.227]. Finally, with respect to his equal protection claim, he again states that "new evidence has come to light," and requests additional discovery time to include this material. [*Id.*]

Defendant has submitted a reply, attaching a sworn affidavit of an LMDC staff member, Plaintiff's booking report, and Plaintiff's acknowledgment of receipt of the LMDC Inmate Handbook. [DN 23].

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

#### A. Section 1983, Generally and Exhaustion Requirement

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies is an affirmative defense, *id.* at 216, which the defendant has the burden to plead and prove by a preponderance of the evidence.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established administrative process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford*, 548 U.S. at 87. "[A]n inmate does not exhaust available administrative remedies . . . when the inmate filed such a grievance but 'did not appeal the denial of that complaint to the highest possible administrative level[.]'" *Id.* at 726 (quoting *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). "'To exhaust remedies, a

prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Woodford,* 548 U.S. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).  As the defendant carries the burden of proof for the affirmative defense of exhaustion, its initial summary judgment burden is heightened.  *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023) (citing *Doe v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019), and *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)).  In this regard, a defendant must show "that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Surles*, 678 F.3d at 455–56 (internal quotation omitted).  "Summary judgment is appropriate in this context only if 'there is no genuine dispute of material fact that the plaintiff failed to exhaust.'"  *Morgan*, 67 F.4th at 366 (quoting *Doe v. Snyder*, 945 F.3d at 961, internal quotation omitted).

### B.  First Amendment/RLUIPA Claims

The First Amendment provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I.  "Prisoners retain the First Amendment right to the free exercise of their religion."  *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)).  "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'"  *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citation omitted).  A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ."  *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a

substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id*. at 736. "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id*. at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id*. "If a prison regulation infringes on a sincerely held religious belief, it is valid only if it is 'reasonably related to legitimate penological interests.'" *Helm v. Allen*, No. 3:18-CV-P90-RGJ, 2020 WL 1172707, at *3 (W.D. Ky. Mar. 11, 2020) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Courts are to give "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Similarly, RLUIPA prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]" 42 U.S.C. § 2000cc-1(a); *Fox v. Washington*, 949 F.3d 270, 277 (6th Cir. 2020) ("RLUIPA provides greater protections than the First Amendment."). Under RLUIPA, a plaintiff must show "that the government substantially burdened [his] religious exercise." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019). An action substantially burdens religion if "that action forced an individual to choose between 'following the precepts of [his] religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his

beliefs.'" *Barhite v. Caruso*, 377 F. App'x. 508, 511 (6th Cir. 2010) (quoting *Living Water Church of God*, 258 F. App'x at 734). Prison regulations or policies that substantially burden sincere religious practice will only be upheld it they further compelling government interests and are the least restrictive means of furthering those interests. 42 U.S.C. § 2000cc-1(a); *Koger v. Mohr*, 964 F.3d 532, 539 (6th Cir. 2020).

While RLUIPA gives prisoners stronger religious protections than the First Amendment, *Holt v. Hobbs*, 574 U.S. 352, 357 (2015), "[c]ourts must give 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Ackerman v. Washington*, 16 F.4th 170, 179–80 (6th Cir. 2021) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005)). "If a prison's regulations satisfy RLUIPA, they satisfy the First Amendment, but not the other way around." *Roberts v. Henderson Cnty.*, No. 4:21-CV-00078-JHM, 2022 WL 16640015, at *3 (W.D. Ky. Nov. 2, 2022).

Plaintiff adheres to Islam and observes Ramadan which requires Plaintiff to fast from sunrise to sunset. Plaintiff alleges that during Ramadan 2022, April 1 to April 30, his religious beliefs and practices were violated by LMG's knowing failure to accommodate his Ramadan-related dietary dinner needs, including the timing and content of the meals and LMG's knowing failure to provide Plaintiff with a copy of the Quran, ordered and paid for by Plaintiff, "citing its new policy not to allow inmates any books or magazines" adopted by the LMDC the first day of Ramadan, April 1, 2022. [DN 1, PageID.5].

Defendant moves for summary judgment on Plaintiff's First Amendment/RLUIPA claims on the grounds that they are unexhausted or otherwise without merit. [DN 20, PageID.156-159].

The Court agrees that Defendant is entitled to summary judgment, addressing each of Plaintiff's complaints in turn below.

### 1. Religious Text

Plaintiff asserts that he ordered a Quran by mail, and that the Quran was returned to sender pursuant to an LMDC policy prohibiting books and magazines effective April 1, 2022.  [DN 1, PageID.5].  Plaintiff filed a grievance regarding this matter on April 15, 2022.  (DN 20-2, PageID.173].  A grievance response was provided on April 27, 2022 stating, "per policy put into place by LMDC on 4.1.22 all books magazine[s,] etc. are not allowed."  [*Id*.].  The response also indicated that the grievance was "non-grievable."  [*Id*.].

To the extent that Plaintiff's grievance on this matter was determined "non-grievable," Defendant acknowledges that Plaintiff was not required to file an appeal therefrom.  [DN 20, PageID.157].  *See Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004) (holding that an inmate "cannot be required to exhaust administrative remedies regarding non-grievable issues").  However, Defendant posits that there was no denial of a religious item, as Plaintiff had and continues to have access to a Quran at LMDC, and therefore he fails to set forth a constitutional violation.  [DN 20, PageID.156].

Defendant produces the sworn affidavits of Samuel Whitlow, Jr. ("Whitlow"), Chaplain of LMDC, who attests that on Fridays, an outside Imam holds Muslim services at LMDC and provides prayer rugs, kufi caps, and Qurans to inmates.  [DN 20-7, PageID.216].  Plaintiff would have been able to retain a copy of the Quran brought by the Imam.  [*Id*.]. The Quran is currently available to inmates on tablets provided by LMDC.  [*Id*.].  And, at the time Plaintiff was booked into LMDC in March of 2022, Qurans were available for purchase at the jail commissary.

[DN 23-1, PageID.236].  A printout of the LMDC commissary price list, effective November 19, 2021 lists "Holy Koran" as available for purchase.  [DN 23-4 PageId.244].

In his response to LMG's motion, Plaintiff states that tablets did not become available until 2024.  He states that in 2022, when Plaintiff was booked, he had "no access to a Quran . . . and was forced to order one." [DN 22, PageID.226-227].  He further states that he can produce receipts to show that he ordered a book and the Quran within two days of each other, but only the Quran was returned to sender pursuant to the April 1, 2022, mail policy prohibiting books and magazines. [DN 22, PageID.226].  Yet Plaintiff's purported evidence does not establish that he did not have access to a Quran during Ramadan, 2022, or currently.  To the contrary, he acknowledges that tablets have been available since 2024, and beyond conclusory allegations, he does not proffer any facts to controvert that a Quran was available at the time of his booking and onward.  The fact that Plaintiff was denied a particular copy of a Quran is not sufficient to raise a triable issue as to whether his religious exercise was substantially burdened.  *See, e.g.*, *Dunlap v. Losey*, No. 01–2586, 40 Fed. Appx. 41, at *43 (6th Cir. May 15, 2002) (concluding that "temporary deprivation of [inmate plaintiff's] hardcover Bibles, which [defendant] might have remedied more quickly, while making the practice of his religion somewhat more difficult, did not coerce him into action contrary to his beliefs, and did not state a claim under the RLUIPA"); *Roberts v. Henderson Cnty.*, No. 4:21-CV-00078-JHM, 2022 WL 16640015, at *5 (W.D. Ky. Nov. 2, 2022) (granting summary judgment on First Amendment and RLUIPA claims that plaintiff was denied religious texts where plaintiff was allowed "access to a multitude of religious texts, so his religious rights were not burdened."); *see also*, *e.g.*, *Berryman v. Granholm*, No. CIV.A.06-CV-11010-DT, 2007 WL 2259334, at *10 (E.D. Mich. Aug. 3, 2007), *aff'd on other grounds*, 343 F. App'x 1 (6th Cir. 2009) ("Generally, a substantial burden will not be shown where the prisoner has equivalent alternatives

to practice his religion.").  Plaintiff's claim therefore fails under both the First Amendment and RLUIPA standards for failure to establish a substantial burden.

### 2.  Religious Meals

Next, Plaintiff contends that he did not receive double portions or double trays at sundown, in observance of Ramadan's daylight fasting requirement.  [DN1, PageID.4].  Instead, he would receive a single tray with an additional sandwich.  [*Id.*].  He goes on to state that his Ramadan evening meals were served late, and were "cold and unappetizing."  [*Id.*].  Plaintiff filed grievances relating to the religious meals, indicating that he received a dinner tray plus a sandwich instead of two full trays, and that the food arrived cold.  [DN 20-2, PageID.174-176].  The response to Plaintiff's April 15 and April 25, 2022, grievances both state that "trays were prepared after sundown and include one 'zabo' sandwich.  This is how Ramadan is served."  [*Id.*].  Plaintiff did not appeal either grievance response.

Defendant argues that the meal-related claims are barred by the PLRA's exhaustion requirement because Plaintiff failed to appeal his grievances.  [DN 20, PageID.158].

Defendant submits LMDC's Inmate Grievance Procedures, which provides the following: "A grievance about a specific incident is to be filed within five (5) working days after the incident occurs."  [DN 20-6, PageID.210].  "The Grievance Counselor may reject a grievance that does not comply with the grievance process requirements. A written explanation shall be provided to the inmate concerning the reason for the rejection."  [*Id.*, PageID.211].  "After the grievance has been properly filed, an attempt to resolve the problem will be made through informal resolution means. This may involve the Grievance Counselor, department head or facility staff. The resolution stage will involve inquiries or discussions to attempt to resolve the grievance."  [*Id.*].  "Response to the grievance is to be within ten (10) working days from receipt of the grievance unless special

circumstances require additional attention." [*Id.*]. "The inmate will have five (5) working days after the receipt of the resolution to decide whether to appeal to the next level." [*Id.*]. "An inmate who does not receive a response within forty-five (45) days from the filing of the grievance shall be allowed to pursue his grievance to the next level of review (within five (5) working days). The inmate shall not be allowed to move to the next level of review if more than fifty (50) days have passed since the filing of the initial grievance." [*Id.*]. "If the grievant is not satisfied with the outcome of the resolution response, they may appeal in writing to the Director/designee within five (5) working days after receipt of the resolution response." [*Id.*].

Plaintiff does not dispute that he did not appeal this claim or that it is unexhausted. [DN 22, PageID.227]. To the extent that Plaintiff discusses non-exhaustion in his response, the Court addresses his argument that he was "not properly advised by grievance counselors that he had to appeal his grievances for a grievance to be binding." [*Id.*].

In *Thomas v. McDowell*, No. 2:10-CV-152, 2013 WL 5177137 (S.D. Ohio Sept. 12, 2013), an inmate-plaintiff argued that he should be excused from his failure to properly exhaust his administrative remedies because "the institution never informed him how to participate in the informal complaint, grievance and appeal process, and that he was unaware that the failure to properly exhaust his administrative remedies would result in the dismissal of his federal claims under the PLRA." *Id.* at *4. The district court found that "[t]he Sixth Circuit has rejected the argument that the failure of a facility to explain the grievance policy or the PLRA excused the inmate's failure to exhaust." *Id.* (citing *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 n.2 (6th Cir. 2011) ("A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy.").

Such is the case here. *Thomas* and its cited authority stand for the proposition that under Section 1997e(a), "'[i]f administrative remedies are available, the prisoner must exhaust them." *Id*. (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir.2000)).  A plaintiff's unawareness of the exhaustion process will not excuse this statutory requirement. *See Brock v. Kenton Cnty., KY*, 93 F. App'x 793, 797-798 (6th Cir. 2004) (rejecting inmate's argument that exhaustion should be excused because inmates were not aware of the jail's grievance system).  This includes where, as alleged here, a plaintiff faults prison staff for failing to explain the exhaustion process. *See Willis v. Mohr*, No. 1:11-CV-808, 2013 WL 5773932, *8 (S.D. Ohio Oct. 24, 2013) (rejecting inmate's argument that "the warden, inspector of institutional services or the chief inspector thwarted his ability to comply with the procedures by failing to advise him of the grievance procedures or by failing to volunteer a copy of the grievance procedures").

Despite Plaintiff's purported lack of knowledge of the grievance procedures, the record reflects that he completed numerous grievance forms which, on their face, reflected that there was an appeal process.  [DN 20-2, PageID.175 (Grievance form providing the options, "I am satisfied with the recommendation" or "I wish to appeal this recommendation to the Director (You have five (5) working days to forward this form to the Director).")].  The record also shows that Plaintiff did file grievance appeals for claims both subject to and outside of the instant proceeding.  [DN 20-3, PageID.185,187,190; DN 20-5].  Finally, LMG has submitted evidence showing that Plaintiff accepted a copy of the LMDC Inmate Handbook at intake, which contains the LMDC Grievance Policies and Procedures, including appeal procedures.  [DN 23-1, PageID.236, DN23-5].  Accordingly, Plaintiff has failed to establish the existence of a genuine issue of material fact on the issue of exhaustion.

For these reasons, the Court finds that Defendant has met its burden to show that Plaintiff failed to exhaust his administrative remedies before filing suit on his meal-related claims.

Assuming, *arguendo*, Plaintiff's claim relating to his Ramadan-related dietary needs was properly exhausted, it does not give rise to a constitutional infirmity. "There is no constitutional right to receive double portions for dinner during Ramadan. Rather, 'prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions.'" *Jones v. Bolton*, No. 3:18-CV-572-CHB, 2020 WL 807534, at *5 (W.D. Ky. Feb. 18, 2020) (quoting *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)). Other than his bare assertion that the sandwiches served "taste horrible" and have "essentially no nutritional value," *see* DN 1, PageID.4, Plaintiff sets forth no specific facts and submits no evidence to suggest that the evening meals were nutritionally or calorically inadequate. *See Gill v. Coyne*, No. 3:18-CV-00631-CHL, 2021 WL 4811300, at *11 (W.D. Ky. Oct. 14, 2021) (delivery of kosher meals "hours late, ice cold, and mixed and scrambled all together" only constitute a free exercise violation if they deprived the plaintiff of an adequate diet. "Here, [Plaintiff] has presented no evidence that the kosher meals did not meet his dietary needs nor that the issues with his kosher meal delivery caused him to experience malnourishment.") (citing *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)).

Moreover, Plaintiff points to no Islamic teaching, law, or rule requiring that Plaintiff consume a hot meal during the evening break of his fast. Thus, Plaintiff fails to show that the temperature of the meals he received was religiously non-compliant such to interfere with the free exercise of his religion. Prisoners have a constitutional right to meals that meet their nutritional needs and to be served meals that do not violate their sincerely held religious beliefs, "[b]ut there is no constitutional right for each prisoner to be served the specific foods he desires." *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (citing *Colvin v. Caruso*, 605 F.3d 282, 290 (6th

Cir. 2010) and *Spies v. Voinovich*, 173 F.3d 398, 406-07 (6th Cir. 1999)). District courts in this Circuit have routinely rejected similar claims. *See Crump v. Best*, No. CIV. 10-13787, 2012 WL 1056806, at *8 (E.D. Mich. Mar. 5, 2012), *report and recommendation adopted*, No. 10-CV-13787, 2012 WL 1021703 (E.D. Mich. Mar. 27, 2012), *aff'd in part, appeal dismissed in part* (Jan. 8, 2014) (complaint of cold Ramadan dinners was not sufficiently serious to constitute a substantial burden; collecting cases holding the same); *see also Avery v. Johnson*, No. 2:23-CV-101, 2023 WL 5215163, at *5 (W.D. Mich. Aug. 15, 2023), *appeal dismissed*, No. 23-1838, 2023 WL 8704113 (6th Cir. Oct. 25, 2023) ("Plaintiff's allegations that his Ramadan food bags contained rotten fruits and cold beans, as well as his allegations that they were missing items on two occasions, fail to show that Defendants infringed upon his religious practice. Nothing in the complaint allows the Court to infer that Defendants refused to accommodate Plaintiff's religious practice."). Because Plaintiff cannot show a substantial burden stemming from his Ramadan meals, Plaintiff's claim fails under both First Amendment free exercise and RLUIPA standards.

Finding no genuine dispute as to any material fact, Defendant is entitled to summary judgment on Plaintiff's First Amendment and RLUIPA claims pertaining to religious materials and meals.

### C. Fourteenth Amendment Conditions of Confinement Claims

While the Eighth Amendment provides a convicted prisoner the right to be free from cruel and unusual punishment, it is the Due Process Clause of the Fourteenth Amendment that provides the same protections to pretrial detainees. *Thomas v. Mayfield Police Dep't*, No. 5:21-CV-P97-TBR, 2021 WL 6135560, at *4 (W.D. Ky. Dec. 29, 2021) (citing *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018)). Thus, the Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees. *Brawner v. Scott Cnty., TN*, 14 F.4th 585, 591 (6th Cir. 2021).

This standard has two prongs.  To satisfy the first prong under either the Eighth or Fourteenth Amendment, a plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the second prong under the Fourteenth Amendment, a plaintiff must show that defendants acted "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Brawner*, 14 F.4th at 596 (quoting *Farmer*, 511 U.S. at 836); *see also Brannon v. Guill*, No. 5:21-CV-P141, 2022 WL 433164, at *3 (W.D. Ky. Feb. 11, 2022) ("The *Brawner* court, however, changed the subjective prong of the standard for Fourteenth Amendment claims brought by pretrial detainees and held that a 'modified' deliberate-indifference standard of recklessness now applies.").

Plaintiff alleges that LMG failed to establish a safe, sanitary, and healthy environment in the detention center in violation of the Fifth, Eighth, and Fourteenth Amendments. [DN 1, PageID.5; DN 1-1, PageID.9-10].  Plaintiff further alleges that LMG has a pervasive attitude and practice of ignoring all serious condition-of-confinement issues, including its unacceptable food/safety practices.  Plaintiff claims that he was placed in an unsanitary cell, denied cleaning supplies and laundered underwear, suffered from illegal searches, endured unsanitary and unsafe food, received no pillow, slept on metal racks and floors, and endured constant light in the dorm as asserting claims for violation of the Fourteenth Amendment.  [*Id.*].

Defendant moves for summary judgment on the grounds that these claims are either unexhausted or without merit.  [DN 20, PageID.159-164].  The Court agrees that Defendant is entitled to judgment as a matter of law, addressing Plaintiff's aforementioned complaints in turn below.

### 1. Cleaning Supplies

On April 21, 2022, Plaintiff reported receiving cleaning supplies twice per week instead of daily. The grievance counselor responded on May 2, 2022, stating that "1st shift staff addressed on ensuring cleaning supplies are passed to housing areas." [DN20-3, PageID.178]. Plaintiff did not appeal this grievance. Plaintiff filed a nearly identical grievance on May 2, 2022, which was returned on May 10, 2022 as "non-grievable," with a response indicating "per policy inmate may not re-grieve the same issue [within] a six month period." [DN 20-3, PageID.179].

As discussed above, Plaintiff concedes that his grievances were not appealed, but seeks to excuse the exhaustion requirement because he was not properly advised of the appeal process. [DN 22, PageID.227]. The Court has considered and rejected this argument. Accordingly, Defendant has met its burden to show that Plaintiff failed to exhaust his administrative remedies before filing suit and that Plaintiff has failed to establish the existence of a genuine issue of material fact on the issue of exhaustion. In any event, his conclusory allegation that "Plaintiff and others were getting sick," due to receiving cleaning products only twice per week, *see* DN1-1, PageID.9, is insufficient to satisfy the objective component of a condition of confinements claim. *See Taylor v. Wright*, No. 20-13041, 2023 WL 5822761, at *3 (E.D. Mich. Apr. 19, 2023), *report and recommendation adopted*, No. 20-13041, 2023 WL 4906586 (E.D. Mich. Aug. 1, 2023) (rejecting conclusory allegations that inmate's "toilet was dirty and he contracted a disease from using the toilet," during 20-day stay in an unclean cell).

### 2. Laundry Supplies

On May 4, 2022, Plaintiff requested laundry service or laundry supplies to clean his clothing. [*Id*., PageID.181]. A resolution response to this grievance dated July 4, 2023, stated,

17

"laundry is done for the inmates once a week unless there is no laundry officer that day." [*Id.*, PageID.180].

Defendant asserts that this claim is unexhausted and barred by the PLRA because Plaintiff failed to appeal this grievance until July 10, 2023, after the complaint in the instant proceeding was filed on March 22, 2023. [DN 20, PageID.160]. The record reflects that Plaintiff could not have appealed the grievance response prior to the commencement of the instant lawsuit because LMDC did not respond to his grievance until July of 2023. Nonetheless, the LMDC Inmate Grievance Procedures make further administrative proceedings available in the absence of a timely response at the Resolution Stage. [DN 20-6, PageID.211 ("An inmate who does not receive a response within forty-five (45) days from the filing of the grievance shall be allowed to pursue his grievance to the next level of review (within five (5) working days). The inmate shall not be allowed to move to the next level of review if more than fifty (50) days have passed since the filing of the initial grievance.")]. Thus, Plaintiff had remedies available that he was required to pursue, absent a timely response by the grievance counselor. *See Swain v. Clark,* No. 3:22-CV-P63-JHM, 2023 WL 4412170, at *5 (W.D. Ky. July 7, 2023) (rejecting plaintiff's argument that he could not have exhausted his grievance because a response was not received until after commencement of § 1983 suit); *see also Anderson v. Jutzy,* No. CV 15-11727, 2017 WL 710066, at *3 (E.D. Mich. Feb. 2, 2017), *report and recommendation adopted*, No. 15-11727, 2017 WL 697053 (E.D. Mich. Feb. 22, 2017) (declining to excuse the exhaustion requirement where "the MDOC grievance process was not 'unavailable' to the Plaintiff, notwithstanding any untimeliness in the Step II response."); *see generally Bell v. Campbell,* 43 F. App'x 841, 842-43 (6th Cir. 2002) (prison officials' alleged delay in processing prisoner's grievance did not excuse his failure to exhaust administrative remedies under prison's inmate grievance procedure). And, as pointed out by

18

Defendant, a prisoner-plaintiff may not complete the grievance process after filing suit. *See Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the [PLRA] makes exhaustion a precondition to filing an action in federal court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.").

In any event, a denial of clean clothes may constitute a Fourteenth Amendment violation only where it poses a substantial risk of serious harm to the inmate. *See generally*, *Farmer*, 511 U.S. at 834. Plaintiff's complaint asserts that LMG was not providing laundry services, nor providing any means by which inmates could clean/wash their undergarments, other than to launder their items in the sink. [DN 1-1, PageID.9]. Plaintiff's May 4, 2022, grievance states that the facility did not provide laundry services, and, although inmates were allowed to purchase washing powder from the commissary, did not provide laundry bags for clothing. [DN 20-3, PageID.181]. Plaintiff does not specify when or for how long laundry services were absent, nor does he elaborate on the consequences of wearing unwashed or sink-laundered clothing. Plaintiff has not alleged actual harm, or a substantial risk of serious harm as a result of the conditions he alleges. As such, he does not set forth a constitutional violation. *See Koch v. Cnty. of Franklin, Ohio*, No. 2:08-CV-1127, 2010 WL 2386352, at *13 (S.D. Ohio June 10, 2010) (granting summary judgment where plaintiff's claim that, among other things, he was "forced to hand wash laundry in the sink or shower" did not establish an "excessive risk" and thus did not rise to the level of a constitutional violation); *Hamilton v. Jindell*, No. CV 21-12054, 2022 WL 17814622, at *7 (E.D. Mich. Nov. 28, 2022), *report and recommendation adopted*, No. 21-12054, 2022 WL 17811953 (E.D. Mich. Dec. 19, 2022) (collecting cases holding that "temporary inconveniences" such as lack of laundry facilities or clean clothes do not suffice to state a conditions of confinement claim).

### 3.  Hygiene Items

Plaintiff filed a grievance on May 10, 2022, stating he that he and other inmates were only given five rolls of toilet paper for 35 to 40 people in a dorm, which was depleted in one day.  They went without toilet paper for five days.  They were also not given soap for showers for one week. [DN 20-3, PageID.183].  A resolution response dated May 24, 2022, states that "1st shift staff have been instructed to ensure inmates get proper hygiene items."  [*Id.*, PageID.182].  Plaintiff did not appeal this grievance, so his claim relating to the deprivation of hygiene items, e.g., soap and toilet paper, for five to seven days is unexhausted and barred by the PLRA.  *See Thompson v. Robertson*, Case No. 3:15–CV–1527, 2017 WL 1048018 at *5 (M.D. Tenn. Mar. 20, 2017) (prisoner's failure to file appeal of grievance rendered it unexhausted).  In any event, the Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time . . . , i.e., only six days' is not actionable conduct."  *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb.1, 2000) (unpublished decision)).

### 4.  Clean Towels

On May 11, 2022, Plaintiff filed a grievance stating that he had not been given clean towels for showers in over two weeks.  [DN 20-3, PageID.185].  A resolution response dated July 6, 2022, stated that Plaintiff was "seen on camera with new sheets, towel, and jump suit."  [*Id.*, PageID.184].

Pointing to the affidavit of Grievance Counselor Stephanie Brown ("Brown"), Defendant argues that this claim is unexhausted because Plaintiff did not appeal the substantive basis of the LMDC's response, but instead appealed the delay in receiving a response.  [DN 20, PageID.161; DN 20-1, PageID.170].  LMG does not produce the grievance appeal or response thereto, and does not address whether his grievance appeal was rejected on procedural grounds.  Accordingly the

Court cannot find that Defendant has met its burden in establishing the affirmative defense of non-exhaustion. *See Diing v. Graeser*, No. 1:10-CV-1191, 2012 WL 847321, at *2 (W.D. Mich. Mar. 13, 2012) (defendant failed to carry its burden where it was unclear why plaintiff's appeal was denied and grievances were absent from the record).

Turning then to the merits, Plaintiff's conditions-of-confinement claim based upon a two-week denial of clean towels fails to state a cognizable § 1983 claim.  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."[2] *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "'The circumstances, nature, and duration of a deprivation . . .  must be considered in determining whether a constitutional violation has occurred.'" *Boyington v. Walker*, No. 3:18CV-P134-GNS, 2018 WL 3649027, at *3 (W.D. Ky. Aug. 1, 2018) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  Courts in this Circuit have held that unpleasant conditions of similar duration without resulting actual harm or a substantial risk of serious harm fail meet the objective prong of the *Brawner/Farmer* standard.  *See, e.g., Newell v. Watson*, No. 1:14-CV-304, 2016 WL 1254355, at *8 (E.D. Tenn. Mar. 29, 2016) (allegations that "the bedding is stained and stinking due to mold, and the inmates' underwear is only washed every two weeks" were insufficient to state an Eighth Amendment

---

[2] As stated earlier, the Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees such as Plaintiff. *Bensfield v. Murray*, No. 4:21-CV-P104-JHM, 2022 WL 508902, at *2 (W.D. Ky. Feb. 18, 2022).  However, "the first ('objective') prong of the Eighth Amendment analysis still applies to Fourteenth Amendment pretrial detainee claims," while "the Sixth Circuit has modified the second ('subjective') prong for Fourteenth Amendment claims in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015)."  *Rice v. Lewis*, No. 4:23-CV-P33-JHM, 2023 WL 4166110, at *2 (W.D. Ky. June 23, 2023).  For purposes of this Memorandum Opinion and Order, the Court need only address the first ("objective") prong of the Fourteenth Amendment analysis.

claim); *Cook v. Leitheim*, No. 1:22-CV-630, 2022 WL 3040342, at *5 (W.D. Mich. Aug. 2, 2022) (two-week deprivation of clean clothing failed to state an Eighth Amendment violation); *Jones v. Toombs*, 77 F.3d 482 (6th Cir. 1996) (holding that two weeks without a mattress did not violate the Eighth Amendment); *Keel v. Davidson Cnty. Sheriff's Office*, No. 3:13-1145, 2015 WL 799724, at *3 (M.D. Tenn. Feb. 25, 2015) (three-week sewage leak with no resulting harm failed to satisfy objective component). Here, the uncontroverted facts of record do not establish an extreme deprivation such to amount to an unconstitutional condition of confinement, and Plaintiff proffers no facts or evidence to establish a genuine dispute for trial.

### 5. Disposal of Personal Property

Plaintiff filed a grievance on September 16, 2022, stating that his allergy tablets, recently purchased from the commissary, were discarded by LMDC employees during a cell search. [DN 20-3, PageID.187]. A resolution response dated May 24, 2023, determined that Plaintiff's grievance was unfounded, stating that "this area search was conducted due to inmates activity that involved possible drug activity. This was a shift detail." [*Id.*, PageID.186].

Defendant argues that this claim is unexhausted because Plaintiff did not appeal this grievance until June 14, 2023, exceeding the five-day time limit to appeal under the Inmate Grievance Procedures. [DN 20, PageID.162]. The Court rejects this argument because LMDC did not reject his grievance as untimely or improperly filed but appears to have addressed the merits of the grievance appeal. [*Id.*, PageID.186]. *See Reed–Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we."). However, the facts establish that Plaintiff filed suit before receiving the resolution response, and, as discussed earlier herein, failed to properly exhaust the administrative remedies available to him

22

as set forth in LMDC's Inmate Grievance Procedures, Section VI.G.2.j., which permits inmates to pursue a grievance to the next level of review within five days if there has been no response within 45 days of filing the initial grievance.  [DN 20-6, PageID.211].  *See Swain,* 2023 WL 4412170, at *5 (rejecting plaintiff's argument that he could not have exhausted his grievance because a response was not received until after commencement of § 1983 suit); *Anderson*, 2017 WL 710066, at *3 (declining to excuse the exhaustion requirement where "the MDOC grievance process was not 'unavailable' to the Plaintiff, notwithstanding any untimeliness in the Step II response."); *see generally Bell,* 43 F. App'x at 842-43 (prison officials' alleged delay in processing prisoner's grievance did not excuse his failure to exhaust administrative remedies under prison's inmate grievance procedure).  Plaintiff's claim in this regard is unexhausted.

### 6.   Spoiled/Contaminated Food

Plaintiff alleges that he and other inmates were served "food that was left over . . . spoiled, smelled rotten, and was cold."  [DN 1-1, PageID.11].  He also states that a piece of wood was placed on his peanut butter and jelly sandwich on March 7, 2023.  [*Id.*].

Plaintiff filed a grievance on December 7, 2022, complaining that on December 6, 2022, he and other inmates were served left over food that was dried out, cold, and discolored from sitting out.  [DN 20-3, PageID.188].  That grievance was returned as non-grievable on December 14, 2022, stating that an inmate may file a grievance only on behalf of themselves, and not others [*Id.*].  Plaintiff subsequently filed a grievance stating that on March 6, 2023, he noticed 3/4-inch piece of wood on his sandwich, which, if swallowed, could have damaged his lungs.  [DN 20-3, PageID.189].  The resolution response dated March 13, 2023, stated that diet trays are prepared "under the supervision of kitchen employees.  If work aides on the floors are tampering with your trays speak with floor [sergeant, lieutenant, or captain] about supervising inmates when passing

out trays." [*Id*.].  Plaintiff appealed and received a review/decision from the Director on March 23, 2023, stating, "kitchen work aides are now and will be supervised closely during meal prep." [*Id*., PageID.190].

To the extent Plaintiff's food quality and contamination claims are exhausted, neither claim rises to the level of a constitutional infirmity.  Courts in this Circuit have routinely held that spoiled, cold, or even contaminated food trays do not meet the objective component of a conditions-of-confinement claim, particularly where only a single incident is alleged.  *See Balcar v. Smith*, No. 3:16-CV-P428-DJH, 2017 WL 380931, at *4 (W.D. Ky. Jan. 26, 2017), *subsequently aff'd*, No. 17-5159, 2017 WL 3613479 (6th Cir. July 17, 2017) (collecting cases holding that isolated incidents of foreign bodies, including rodents or insects, surfacing in the food served to prisoners do not constitute an Eighth Amendment violation); *Kilgore v. Thompson*, No. 5:14-CV-292-DCR-REW, 2015 WL 13273315 at *6 (E.D. Ky. Oct. 13, 2015) (collecting cases and concluding that "occasional or episodic incidents of contaminated food or unclean food areas are not constitutional violations"); *Smith v. Younger*, No. 98-5482, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) ("The fact that the [prison] food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation."); *Dean v. Campbell*, No. 97–5955, 1998 WL 466137, at *2 (6th Cir. July 30, 1998) (per curiam) (holding that allegation of cold meals for a short period of time "fail[ed] to allege facts showing that [prisoner] was subjected to the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim"); *Velthuyson v. Aramark Corr. Servs., Inc*., No 2:24-CV-192, 2017 WL 236191, *2 (W.D. Mich. Jan. 19, 2017) (a number of isolated instances of being served spoiled or cold food do not constitute a sufficiently serious deprivation to implicate the Eighth Amendment); *Kinner v. Moore*, No. 15-2105-JDT, 2016 WL 1421016 (W.D. Tenn.

Apr. 8, 2016) (finding that inmate's allegations that "trays are dirty, food products are expired and outdated, meats and other food products are raw or undercooked, the food is cold and inedible, and the portions are inadequate" did not meet the objective standard for an Eighth Amendment claim). Thus, even if Plaintiff had produced admissible evidence that he had been served aged, spoiled, or contaminated food, he would still fail to meet the objective standard required to state a constitutional violation.

### 7.   Remaining Claims

Plaintiff's remaining claims in the complaint allege that he was denied a pillow, a dark room for sleeping, and windows in his dorm; he had to sleep on metal racks and floors; and only had access only to sink water and kool-aid to drink.  [DN1-1, PageID.20].  Plaintiff does not assert, nor does an examination of the record reveal, that he grieved any of these issues utilizing the LMDC Grievance Inmate Procedures.  As such, Defendant is entitled to summary judgment based on Plaintiff's failure to properly exhaust administrative remedies.  *See Ingram v. Zamenski*, No. CV 22-10434, 2023 WL 2623152, at *5 (E.D. Mich. Mar. 7, 2023), *report and recommendation adopted*, No. 22-10434, 2023 WL 2619047 (E.D. Mich. Mar. 22, 2023) ("Because it is undisputed that Ingram failed to file a grievance on his Eighth Amendment claim and pursue that grievance through the MDOC's three-step process, that claim is unexhausted.").

Accordingly, the Court finds no dispute of material fact and Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment conditions-of-confinement claims.

### D.  Fourteenth Amendment Equal Protection Claims

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated

alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal

protection claim, a plaintiff must adequately plead that the government treated the plaintiff

"'disparately as compared to similarly situated persons and that such disparate treatment either

burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical*

*Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports*

*Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).  Importantly, the

"'threshold element of an equal protection claim is disparate treatment; once disparate treatment

is shown, the equal protection analysis to be applied is determined by the classification used by

government decision-makers.'"  *Ctr. For Bio-Ethical Reform*, 648 F.3d at 379 (quoting

*Scarborough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)).  A plaintiff may

advance an equal-protection claim under a "class-of-one" theory[3] "where the plaintiff alleges that

the state treated the plaintiff differently from others similarly situated and that there is no rational

basis for such difference in treatment."  *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir.

2005) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  A plaintiff establishes that

defendant's action lacks a rational basis "either by negativing every conceivable basis which might

support the government action, or by showing that the challenged action was motivated by animus

or ill-will." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005) (citation omitted).

 Plaintiff asserts that he was treated differently by LMG officials regarding access to his

discovery materials.  He states that on at least two occasions he did not receive discovery material

sent to him at LMDC by his attorney, that he repeatedly was given a short amount of time to view

discovery he does receive, that he filed multiple grievances, and that he obtained a Court order in

November 2022 requiring LMG to provide him at least two hours of access to discovery a week,

---

[3] Plaintiff does not allege that one of his fundamental rights was violated, or that he was a member of a suspect class. Therefore, the Court presumes, as does Defendant, that Plaintiff intends to bring a "class of one" claim.

which he states continued to be denied.  Plaintiff states that he "is similarly situated to other inmates," that other inmates were obtaining discovery access three times a week, that he only received 30 minutes per month, and that in December of 2022, he was the only inmate in his dorm who was not provided access to his discovery materials.  [DN 1-1, PageID.3-5].  Plaintiff filed four grievances related to his Fourteenth Amendment Equal Protection claims asserted in his complaint on June 30, 2022, August 24, 2022, November 27, 2022, and December 5, 2022. [DN 20-4, PageID.194-200].

Defendant seeks summary judgment on the basis that Plaintiff fails to meet his initial burden of establishing disparate treatment because he fails to allege that he is similarly situated to other inmates.  [DN 20, PageID.165].  In support of its motion, Defendant submits the sworn affidavit of Michael Montgomery ("Montgomery"), Captain at LMDC, who attests that in 2022, LMDC had a limited number of functioning laptops and numerous court orders for discovery.  [DN 20-8, PageID.219].  Due to the shortage of resources, other inmates besides Plaintiff were unable to view their DVD discovery.  [*Id*.].  Montgomery e-mailed upper command staff to request additional laptops and advised Plaintiff to contact his attorney so his attorney could view his DVD discovery with him at LMDC.  [*Id*.].  Since December 4, 2022, Plaintiff had the opportunity to view DVD discovery every week, but Plaintiff declined on numerous occasions. [*Id*., PageID.220].

Defendant submits Plaintiff's institutional grievances relating to discovery.  Grievance resolution response dated August 1, 2022, indicates that Plaintiff was advised by Montgomery that his property was misplaced by mistake and to contact his attorney to obtain his discovery by mail so that he could view his case before the next court date.  [DN 20-4, PageID.193].  A September 23, 2022, resolution response states, "we don't have enough laptops. It[']s very difficult to handle

the court order DVD list and anyone else that signs up to view their motion . . . [staff] sent an email to upper command staff as well for solution."  [*Id.*, PageID.195].

Plaintiff, in turn, proffers no controverted facts, evidence, or legal arguments in support of his claim.  Rather, he asserts that "new evidence has come to light" in regard to this claim and seeks additional time to prepare discovery.[4]  [DN 22, PageID.227].  Plaintiff does not address Defendant's evidence that establishes that other inmates were also unable to view their discovery due to a shortage of laptops at LMDC.  As such, he fails to present sufficient evidence to raise a genuine issue of fact that Defendant intentionally treated Plaintiff differently from others similarly situated without any rational basis for the difference.  *See Pruitt v. Lewis*, No. 06-2867, 2008 WL 80334, at *6 (W.D. Tenn. Jan. 7, 2008) (granting summary judgment on class-of-one claim where plaintiffs did not attempt to establish that inmate was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment); *Settle v. Parris*, No. 3:19-CV-32, 2021 WL 1566074, at *18 (E.D. Tenn. Apr. 21, 2021) (granting summary judgment where plaintiff set forth no probative evidence as to either element of class-of-one claim).

Finding no triable issue of fact, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment Equal Protection claim.

---

[4] Under Rule 56(d), a responding party may ask the court to defer considering or deny summary judgment because he has not been unable to discover essential facts.  Fed. R. Civ. P. 56(d).  As Defendant points out, *see* DN 23, PageID.232, Plaintiff has not showed by affidavit or declaration, that for specified reasons, he cannot present facts essential to justify his opposition. *See* Fed. R. Civ. P. 56(d).  Plaintiff has not explained how additional discovery time would enable him to oppose Defendant's motion, much less identified a similarly-situated prisoner who was treated differently as necessary to his claim.  The Court declines his request.  *See Dotson v. Corr. Med. Servs.*, 584 F. Supp. 2d 1063, 1066 (W.D. Tenn. 2008), *aff'd sub nom. Dotson v. Phillips*, 385 F. App'x 468 (6th Cir. 2010) (rejecting request for additional discovery under Rule 56(f) where plaintiff merely stated that "expert testimony is needed").

### E.  Motion for Default Judgment

As a final matter, the Court addresses Plaintiff's motion for default judgment on the basis that Defendant failed to timely file an answer in his case.  [DN 15].

The docket reflects that Defendant filed its answer to Plaintiff's complaint with the Court on September 25, 2023, with a certificate of service of the mailed copy to Plaintiff at the LMDC. [DN 13].  In Defendant's response to the instant motion, it asserts that Plaintiff was simultaneously mailed a copy of the answer on September 25, 2023, when the same was electronically filed with this Court, and thus Defendant timely responded to the complaint.  Also in its response, Defendant states that another copy of the answer was mailed to Plaintiff at the LMDC on February 1, 2024, and includes a certificate of service.  [DN 17].  Plaintiff acknowledges receipt of the re-sent answer at the LMDC jail on February 5, 2024, but demands proof of Defendant's mailing on September 25, 2023.  [DN 18].

In this case, Plaintiff did not request, nor did the Clerk of Court enter, an entry of default against Defendant.  An entry of default is necessary to obtain a default judgment.  *See* Fed. R. Civ. P. 55(a).  "An entry of default and a default judgment are distinct concepts which must be treated separately."  *Redd v. Vails*, No. 14-14340, 2015 WL 1511029 at *3 (E.D. Mich. Mar. 25, 2015). As explained by the Southern District of Ohio,

> Obtaining a default judgment is a two-step process governed by Fed. R. Civ. P. 55. . . .  First, under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  After the clerk enters the party's default, the plaintiff must move the court for a default judgment under subsection (b)(2).

*Gallant v. Holdren*, No. 1:16-CV-00383, 2017 WL 3106764, at *2 (S.D. Ohio Feb. 1, 2017), *report and recommendation adopted*, No. 1:16CV383, 2017 WL 3088398 (S.D. Ohio July 20, 2017).  As

found in *Gallant*, Plaintiff is not entitled to default judgment because he failed to complete the first step of the process. *Id.* at *2 (citing *Heard v. Caruso*, 351 F. App'x 1, 15-16 (6th Cir. 2009) (before a party obtains a default judgment under Rule 55(b)(1) or (b)(2), there must be an entry of default by the clerk under Rule 55(a)). Thus, Plaintiff's motion must be denied as procedurally improper under Fed. R. Civ. P. 55.

## IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

(1) Defendant's motion for summary judgment [DN 20] is **GRANTED**.

(2) Plaintiff's motion for default judgment [DN 15] is **DENIED**.

(3) The Court will enter a Judgment consistent with this Memorandum Opinion and Order.

Date:  June 25, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:  Plaintiff, *pro se*
     Counsel of Record
4414.015